CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
NOV 13 2018
JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 7:18-cr-00027 |
| | ) | |
| v. | ) | |
| | ) | |
| EAST MENTAL HEALTH, LLC, | ) | By:   Hon. Michael F. Urbanski |
| et al., | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on the government's Motion to Dismiss Without Prejudice (the "Motion"), ECF No. 80, which asks the court to dismiss the Indictment, ECF No. 3, against defendants Christopher Dean East, Joann Kathleen Patterson, Alfred Lloyd Robrecht, William Barclay Allison, Ryan Thomas Greene (collectively, "Individual Defendants"), and East Mental Health ("EMH," and collectively with Individual Defendants, "Defendants") without prejudice, under Federal Rule of Criminal Procedure 48(a). Defendants oppose the Motion and ask the court to dismiss the Indictment with prejudice. See Def.'s Resp. U.S.'s Br. Supp. Mot. Dismiss Without Prejudice ("Robrecht Opp."), ECF No. 90; Def. William Barclay Allison's Resp., ECF No. 91; Def.'s Resp. U.S.'s Br. Supp. Mot Dismiss Without Prejudice ("Patterson Opp."), ECF No. 92; Br. Resp. Gov'ts Mot. Dismiss Without Prejudice & Supp. Dismissal With Prejudice ("Greene Opp."), ECF No. 93; Mot. Dismiss Pursuant Rule 48(b)(1) & (3) & Opp. Gov'ts Mot. Dismiss Pursuant Rule 48(a) ("EMH Opp."), ECF No. 94.[1] For the reasons discussed below, the court will **GRANT** the Motion and **DISMISS** the Indictment **without prejudice**.

---

[1] Although all Defendants ask the court to dismiss the Indictment with prejudice under Federal Rule of Criminal Procedure 48(b), only EMH and East have filed an explicit motion to that extent. Nonetheless, the court considers Robrecht's,

## A.

While the parties disagree over the import of the government's delay in prosecuting this case, the underlying timeline is straightforward.

EMH was a Roanoke-based mental health care provider. EMH Opp. 2. East founded EMH, id., and Patterson, Robrecht, Allison, and Greene were high-level managers of EMH. Br. U.S. Supp. Mot. Dismiss Without Prejudice ("Mot. Br."), ECF No. 89, at 2. EMH used Allison Small Business Solutions, LLC ("ASBS") as its contract Medicaid biller. Id. at 11.

Prior to the genesis of the government's investigation, several EMH employees (the "Whistleblowers") brought a brought a separate qui tam action. See Complaint, United States ex rel. Switzer v. E. Mental Health Servs., LLC, Civ. No. 7:13-cv-00498 (W.D. Va. Oct. 24, 2013), ECF No. 3. The qui tam suit remains pending.

The government's investigation of Defendants began in December 2013, after the Whistleblowers brought alleged fraudulent billing practices by EMH to the government's attention. ECF No. 89, at 11. On January 28, 2015, the government executed a search warrant at EMH's Roanoke and Rocky Mount, Virginia locations and at ASBS. Id. The government collected 400 boxes of physical materials and imaged myriad digital materials. Id.

Shortly after execution of the search warrant, the government and former counsel for EMH began a series of communications regarding access to the materials collected in the search. See February 27, 2015 Letter, ECF 89 Ex. 1, at 1. As part of that discussion, the government offered to provide EMH with a digital copy of all of the materials taken in the search, but only if EMH agreed to share the costs with the government. Id. at 3. The

---

Patterson's, and Greene's Oppositions to implicitly move for dismissal under Rule 48(b).

government estimated that digitization would cost approximately $175,000. Id. Apparently, no cost sharing agreement was reached.

Between August 12, 2015 and July 21, 2016, the government shipped the physical boxes to a third-party vendor for digitization. Mot. Br. at 14. Additionally, the government avers that it spent 2,606 hours reviewing materials in Relativity, an online document review service, and 8,488 investigative hours. Id. at 15. The government does not detail why this case required over 11,000 hours before the charges were brought before the grand jury.

The investigation continued through June 26, 2018, when Defendants were indicted on health care fraud charges. Id. at 2. On July 11, 2018, the court entered a Pretrial Order, ECF No. 52, setting the case for trial beginning September 4, 2018, in accordance with speedy trial requirements. On July 20, 2018, Defendants received all grand jury transcripts, the lead investigating agent's summary of the case with exhibits, and approximately 140 memoranda of interview. Mot. Br. 3. On August 14, 2018, the government met with defense counsel and arranged to provide each Defendant with access to digital evidence.[2] Id. at 3–4.

On August 21, 2018, two weeks before trial, the government filed a Motion to Designate Case as Complex Case, and Excludable Delay, and to Continue the Jury Trial, ECF No. 73. Initially, most, but not all, defendants consented to the designation. At an August 24, 2018 hearing, counsel for the government stated that "the government is fully aware that it has failed to comply with its discovery obligations in this case as mandated by the Court, and we have failed to comply with the scheduling order for filing pretrial motions." Aug. 24, 2018 Htg. Tr. At 4. The government stated that if the case was not designated as complex and the trial continued, it would move to dismiss the case without prejudice as it could not try the case

---

2 As Robrecht's counsel made an appearance after the August 14, 2018 meeting, Robrecht received digital access at a later date. Mot. Br. 4.

3

on schedule given that 3.5 million pages of discovery had not yet been produced. Id. at 5-7. As a result of the government's position, the defendants asked that the case be dismissed with prejudice. The court ultimately denied the motion to continue, and requested that the parties brief the issue of whether the case should be dismissed with or without prejudice. As a result, the government filed the instant Motion, which asks the court to dismiss the Indictment without prejudice under Rule 48(a). Defendants have each filed oppositions to the Motion and ask the court to dismiss the Indictment with prejudice under Rule 48(b).

**B.**

The dismissal of indictments is governed by Federal Rule of Criminal Procedure 48, which provides:

> (a) By the Government. The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.
>
> (b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
>
> (1) presenting a charge to a grand jury;
> (2) filing an information against a defendant; or
> (3) bringing a defendant to trial.

Fed. R. Crim. P. 48.

**1.**

The government moves to dismiss the Indictment without prejudice under Rule 48(a). The court's discretion to deny the government's Motion "is not broad." United States v. Goodson, 204 F.3d 508, 512 (4th Cir. 2000). "[T]he court must grant the government's Rule 48(a) motion unless the court concludes that to grant it would be clearly contrary to manifest

public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith." Id. (citing Rinaldi v. United States, 434 U.S. 22, 30 (1977)).

The defendants admit that the government has not acted in bad faith. See Robrecht Opp. 5 (admitting "the absence of a showing of prosecutorial bad-faith"); Greene Opp. 2 ("Defendant does not assert that the Government acted in bad faith in this case."); cf. "); Patterson Opp. 7 (arguing that the government delayed prosecuting Defendants through "sloth, neglect or mere incompetence"). Nor does the record betray any suggestion that the government has acted in bad faith. Under Goodson, this should be the end of the story: Since the government filed a Rule 48(a) motion and there is no suggestion of bad faith, the court "must grant" that motion and dismiss with indictment without prejudice. Goodson, 204 F.3d at 512; see also Fowlkes v. United States, Civ. No. CCB-14-1700, 2016 WL 6680041, at *3 n.4 (D. Md. Nov. 14, 2016) (holding that once the court finds the government did not act in bad faith, "this court need not address the separate issue of prejudice").

2.

Defendants argue otherwise, however, and instead urge the court to dismiss the Indictment with prejudice under Rule 48(b). See Robrecht Opp. 12–13; Patterson Opp. 9; Greene Opp. 8; EMH Opp. 12. Under Rule 48(b), the court may dismiss an indictment with prejudice "on constitutional grounds" or "under the court's inherent power to dismiss an indictment where the delay is not of a constitutional magnitude." Goodson, 204 F.3d at 513. Defendants do not suggest that the government's delay in bringing the Indictment rises to the level of a due process violation.

Dismissing an indictment with prejudice "is a harsh remedy," as "the court allows its interest in the orderly administration of justice to override the interests of the victims and the

5

public interest in the enforcement of the criminal law." Goodson, 204 F.3d at 514. The court may only dismiss an indictment with prejudice if a defendant can demonstrate he has suffered prejudice. See id.; United States v. Voll, Nos. CRIM.A. 2:05-00231-32, 2006 WL 1831503, at *4 (S.D.W. Va. July 3, 2006) ("As Goodson indicates, dismissal with prejudice is warranted only when prejudice is shown.").

"The prohibition in our criminal justice system against unnecessary delay is designed (1) to protect against 'undue and oppressive incarceration prior to trial,' (2) to 'minimize anxiety and concern accompanying public accusation,' and (3) to protect the 'ability of an accused to defend himself.'" Goodson, 204 F.3d at 515–16 (quoting Smith v. Hooey, 393 U.S. 374, 378 (1969)). The most serious of these interests is the last, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Bonds v. Beale, 145 F. Supp. 2d 708, 716 (E.D. Va. 2001) (quoting Barker v. Wingo, 407 U.S. 514, 532 (1972)).

Accordingly, to demonstrate prejudice, a defendant must demonstrate that the delay in bringing an indictment "interfere[d] with these interests." United States v. Soriano-Jarquin, 492 F.3d 495, 503 (4th Cir. 2007). This point is critical: The prejudice must arise from the <u>delay</u> in bringing an indictment, and not merely from the indictment or the investigation. See id.; United States v. Sample, 565 F. Supp. 1166, 1177 (E.D. Va. 1983) ("[I]t must be demonstrated that actual prejudice suffered by the defendants was the result of the government's delay.").

### 3.

Defendants' allegations only implicate the second interest: the anxiety and public concern accompanying public accusation. Robrecht contends that he has "has been without a job—EMH shut it's [sic] doors in October 2017 . . . [and] has not been able to find any job— given the accusatory black cloud hanging over his head." Robrecht Opp. 10. Moreover,

6

Robrecht claims that "the Commonwealth of Virginia, Department of Health Professionals has opened an investigative inquiry [into him] merely because he is charged with fraud in federal court," with "[h]is professional certification as a licensed clinical social worker . . . now in jeopardy." Id.

Patterson similarly argues that she has "endured having a cloud of criminal investigation hanging over her head for over three years. She was a respected member of the mental health treatment community in Roanoke Valley. These allegations of fraud and dishonesty have irreparably damaged that reputation." Patterson Opp. 8. Patterson also complains that her "job and her professional career ended when EMH closed permanently in 2017." Id. Patterson concludes that this "occurred while the instant prosecution was languishing somewhere in the United States Attorneys' Office." Id. at 9.

Greene complains that "[m]edia reports of the search warrant and the eventual shut-down of [EMH] made the investigation public in the community well prior to the return of the indictment." Greene Opp. 5. Greene also takes issue with the target letter issued to him in October 2016: "While that may be a fairly typical 'target letter,' for Ryan Green it immediately created high stress, anxiety, and concern, which stayed with him for twenty months until he was indicted in June 2018." Id. Like Robrecht and Patterson, Greene contends that he lost his position at EMH because of the investigation. Id. at 6.

EMH suggests that "the profligate and indiscriminate seizure of [its] documents prejudiced EMH in the conduct of its business." EMH Opp. 7. EMH complains that it "has literally been starved and finally killed by this 4.5-year investigation." Id. at 12. And East contends that he "has lost his livelihood, has lost his ability to pursue his 20-year profession, and has been calumnied and disgraced in the press, and in the professional community." Id.

Defendants' litany of complaints largely conflates prejudice arising from the investigation and Indictment with prejudice arising from the delay in bringing the Indictment. The Individual Defendants all complain that they lost their positions at EMH because EMH closed, Robrecht Opp. 10; Patterson Opp. 8; Greene Opp. 5; EMH Opp. 12, and EMH complains that it was shut down because of billing suspension by the Commonwealth of Virginia, EMH 12. These consequences arose out of the investigation (and its predicate allegations), not the delay in bringing the Indictment, and therefore cannot form the basis of prejudice under Rule 48(b). Similarly, while Robrecht and Greene suggest that the Department of Health Professionals' investigation and the target letter, respectively, can form the basis for prejudice, Robrecht Opp. 10; Greene Opp. 5, the prejudice arises from the state investigation and the target letter, not any delay in bringing the Indictment. These complaints so far cannot justify a Rule 48(b) motion to dismiss with prejudice.

What's left are Robrecht's claim that "he has not been able to find any job—given the accusatory black could hanging over his head," Robrecht Opp. 10, Patterson's claim that she has "endured having a cloud of criminal investigation hanging over her head for over three years," Patterson Opp. 10, and Greene's complaint that the investigation was made public well before the Indictment came down, Greene Opp. 5. These complaints implicate the Defendants' interest "to minimize anxiety and concern accompanying public accusation." Goodson, 204 F.3d at 515–16 (internal quotations omitted).

Of course, "anxiety is present to some degree in virtually every case," and a defendant must demonstrate "[s]omething more than the normal anxiety that accompanies a trial . . . to show a degree of prejudice." United States v. Shepherd, 511 F.2d 119, 123 (5th Cir. 1975); see also Goodson, 204 F.3d at 515–16 (citing Shepherd with approval). This generally requires

8

a showing that a defendant "ha[s] suffered particular hardships or was [in] . . . a capital case, where the anxiety would justifiably be more severe." United States v. Avalos, 541 F.2d 1100, 1116 (5th Cir. 1976).

Defendants fail to identify any particular hardships they have suffered because of any delay in bringing the Indictment. Instead, Defendants proffer nebulous allegations of "accusatory black cloud[s]" and "cloud[s] of crimination investigation hanging over [their] head[s]." Robrecht Opp. 10; Patterson Opp. 10. These allegations cannot support a finding of prejudice sufficient for the court to grant a Rule 48(b) motion to dismiss the Indictment with prejudice. See United States v. Tranakos, 911 F.2d 1422, 1429 (10th Cir. 1990) (finding no actionable prejudice from six-year delay).

## C.

Defendants' admission that the government's delay in bringing the Indictment was not in bad faith is fatal to their request to dismiss the Indictment with prejudice: Because there was no bad faith, under Rule 48(a) and Goodson, the court must grant the government's Motion and dismiss the Indictment without prejudice. Even if the court could consider Defendants' request to dismiss the Indictment with prejudice under Rule 48(b), Defendants have not shown they have suffered demonstrable prejudice because of the delay in bringing the Indictment.

Finally, because the court will dismiss the Indictment without prejudice, EMH and East ask the court to order the government to present a new indictment within ninety days. Mot. Alternative Remedy (the "Motion for Alternative Remedy"), ECF No. 100; Mot. Alternative Remedy, ECF No. 101.[3] The court will not intrude on the executive's discretion on the timing of when to bring an indictment. See Newman v. United States, 382 F.2d 479, 480 (D.C. Cir.

---

[3] EMH and East filed identical motions at ECF Nos. 100 and 101.

1967) (Berger, J.) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings . . . ."). However, the court expects that he government will proceed with all deliberate speed. Given the circumstances of this case, should undue delay ensue, the court will revisit the issue of dismissal with prejudice.

Accordingly, the government's Motion will be **GRANTED** and EMH and East's Motions for Alternative Remedy will be **DENIED**. An appropriate Order will be entered.

Entered: Nov. 12, 2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge